UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTHONY GIANNAVOLA,

                              Plaintiff,                    Case No.: 24 Civ. 6096

    -against-

                                                            **COMPLAINT**

LI-WEN GRACE LEE, M.D., Individually, CARMEN
BARBER, Individually, "T.T.", Individually, "C.B.",        **Jury Trial Demanded**
Individually, and DOES 1-5 in their individual
capacities,

                            Defendants.
------------------------------------------------------------------x

       Plaintiff, ANTHONY GIANNAVOLA, by his attorneys The Bellantoni Law Firm, PLLC, for his Complaint respectfully states:

## NATURE OF THE ACTION

       1.     This is an action for compensatory, economic, and punitive damages costs, and reasonable statutory attorney's fees pursuant to 42 U.S.C. § 1988, for the defendants' violation of Plaintiff's constitutional rights as protected by the Second and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

       2.     Plaintiff, who had recently lost his job, drove himself to the hospital to talk to someone, was admitted for an evaluation and observation (to assess whether he was 'a danger to self or others'), and discharged two (2) days later when the doctors concluded that he did not meet the criteria to be "involuntarily committed." In other words, they determined that Plaintiff was not a danger to himself or anyone else.

       3.     Six years later, Plaintiff – an avid hunter – went to the gun store to purchase a new shotgun. He completed ATF Form 4473 and submitted to the federal background check. Plaintiff

was shocked to learn from the FFL[1] that the federal NICS[2] system denied his transaction. After contacting NICS to ascertain the reason for the denial, Plaintiff learned that New York State (falsely) reported him to NICS as a "prohibited person" who had been "committed to a mental institution." Plaintiff was listed in the New York State Office of NICS Appeals and SAFE Act (the "SAFE Act Office") NICS reporting database.

4. Numerous people are wrongfully listed in the NYS reporting database -- people who have only been admitted for observation and evaluation and then discharged because they did not meet the criteria for conversion to involuntary confinement. And, like Plaintiff, the SAFE Act Office provided no notice to them that their Second Amendment right to firearm ownership had been terminated.

5. Plaintiff applied to the SAFE Act Office for a Certificate of Relief from Firearm Disabilities – but his application was denied by the defendant Panel Members.

6. By refusing to remove Plaintiff from the NYS reporting database – a person who is neither criminally insane, adjudicated as a mental defective, and was never involuntarily committed to a mental hospital - Defendants violated Plaintiff's Second and Fourteenth Amendment rights.

7. By failing to provide Plaintiff with notice and an opportunity to be heard at the time that his name and identifying information were initially entered into the NYS reporting database, Defendants violated Plaintiff's Fourteenth Amendment rights.

**JURISDICTION AND VENUE**

8. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the United States Constitution and laws of the United States, and under 28 U.S.C. §

---

[1] Federal Firearms Licensee.
[2] The National Instant Criminal Background Check System.

1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

9. This action seeks relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, § 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

10. Plaintiff ANTHONY GIANNAVOLA ("Plaintiff") is a citizen of the United States and a resident of Monroe County, State of New York.

11. Defendant LI-WEN GRACE LEE, M.D. ("Dr. Lee") sued herein in her individual capacity, is a psychiatrist and a "Panel Member" for the Certificate of Relief From Firearm Disabilities program of the SAFE ACT Office.

12. The SAFE ACT Office is a division of the New York State Office of Mental Health ("OMH").

13. "Panel Members," *inter alia*, individually and collectively enforce and implement policies and procedures of the NICS Office, enforce New York State laws, and render final determinations that affect and implicate the constitutional rights of individuals whose personal identifying information is listed in the New York State NICS reporting database (the "database"), as detailed further below, and communicated to NICS.

14. The defendant Panel Members considered, and made the final determination to deny Plaintiff's request to be removed from the NYS reporting database, thereby violating his Second Amendment rights.

15. Defendant Carmen Barber ("Barber"), upon information and belief, was one such Panel Member.

15. Defendants identified herein as "T.T.", "C.B.", Doe 1, Doe 2, and/or Doe 3 were also Panel Members who considered, and denied, Plaintiff's request to be removed from the NYS reporting database. In doing so, they acted intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

16. Like Dr. Lee, "T.T.", "C.B.', Doe 1, Doe 2, and Doe 3 enforce and implement the policies and procedures of the NICS Office and render final determinations that affect and implicate the Second Amendment rights of individuals who are listed in the reporting database, including Plaintiff.

17. Each of the defendants has the ability to remove an individual's identifying information from the reporting database.

18. Doe 4 and Doe 5 are employed by OMH and has personal knowledge and information concerning individuals who are listed in the NYS reporting database.

19. Doe 4 and Doe 5 knew at or near the time of the event, that Plaintiff's personal identifying information was populated into the NYS reporting database.

20. Doe 4 and Doe 5 failed to provide Plaintiff with Notice that he was now listed in the NYS reporting database, that he would be reported to NICS as a prohibited person, and that such inclusion terminated Plaintiff's ability to engage in conduct protected by the Second Amendment.

21. Doe 4 and Doe 5 failed to provide Plaintiff with an opportunity to be heard concerning the loss of rights that are presumptively protected by the Second Amendment.

22. Doe 4 and Doe 5 acted intentionally and/or with deliberate indifference to Plaintiff's constitutional rights.

23.     Dr. Lee, Barber, C.B., T.T., Doe 1, Doe 2, Doe 3, Doe 4, and Doe 5 were responsible for, and directly created, oversaw, and implemented policies and procedures for including, and maintaining, Plaintiff's information in the NYS reporting database.

24.     Dr. Lee, Barber, C.B., T.T., Doe 1, Doe 2, Doe 3, Doe 4, and Doe 5 personally and directly implemented the policies and procedures described herein that resulted in the violation of Plaintiff's constitutional rights as protected by the Second and Fourteenth Amendments.

## CONSTITUTIONAL AND LEGAL FRAMWORK

### *United States Constitution, amend. II*

25.     "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. Const. amend II.

26.     The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  *McDonald v. Chicago*, 561 U.S. 742 (2010) (plurality opinion).

27.     The Second Amendment codified the *preexisting*, guaranteed, and individual right to possess and carry weapons in case of confrontation. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis supplied); accord *NYSRPA v. Bruen*, 241 S.Ct. 2111, 2127 (2022).

28.     The "central component" of that right is "individual self-defense." *Bruen,* at 2127 quoting, *McDonald,* at 767 (quoting *Heller*, 554 U.S. at 599).

29.     The Second Amendment is "deeply rooted in this Nation's history and tradition" and fundamental to our scheme of ordered liberty." *McDonald*, at 768.

### *The Test To Be Applied In Second Amendment Challenges*

30.     When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. *Bruen*, 142 S. Ct. at 2126 (citation omitted).

31. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. *Ibid.*

32. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Ibid*.

33. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Ibid*.

34. Here, Plaintiff's proposed conduct -- possessing and carrying firearms for self-defense – is covered by the plain text of the Second Amendment. *Heller*, at 592 (defining the plain text of the Second Amendment as "guarantee[ing] the individual right to possess and carry weapons in case of confrontation").

35. To prevail in this action, Defendants must justify their actions "by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2130.

36. *Only* then can the Court conclude that Plaintiff's "conduct falls outside the Second Amendment's 'unqualified command'." *Bruen*, at 2126, 2129-30.

**STATUTORY FRAMEWORK**

37. Under federal law, an individual who has been "adjudicated as a mental defective or who has been committed to a mental institution" is disqualified from possessing, receiving, purchasing, and/or transferring firearms. 18 U.S.C. 922(d), (g)(4).

38. The term "committed to a mental institution" "does not include a person in a mental institution for observation or a voluntary admission to a mental institution" for purposes of firearm disqualifiers under 18 U.S.C. 922(g)(4).

6

39. The SAFE Act Office maintains a federal NICS reporting database (the "NYS database"); all of the individuals in the database are reported to the federal NICS system as having been "adjudicated as a mental defective" and/or "committed to a mental institution."

40. Every individual in the NICS system is considered a "prohibited person" and every subsequent federal background check related to firearms will result in a denial. If you're in the NYS database, then you are in the NICS system and your Right to possess firearms for self-defense has been terminated.

41. But, there are numerous individuals listed in the NYS database who have neither been "adjudicated as a mental defective" nor "committed to a mental institution" yet the SAFE they are being reported to NICS as "prohibited persons" and their ability to possess firearms is terminated.

42. The Federal Brady Handgun Violence Prevention Act of 1993 ("Brady Act" prohibits any person from selling or otherwise disposing of any firearm or ammunition to any person who has been involuntarily "committed to a mental institution" (18 U.S.C. section 922 (d)(4)) and further prohibits any person who has been involuntarily "committed to a mental institution" from shipping or transporting in interstate or foreign commerce, or possessing in or affecting commerce, any firearm or ammunition; or receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. See, 18 U.S.C. section 922 (g)(4); 14 NYCRR 543.1(a).

43. Under the Federal NICS Improvement Amendments Act of 2007, Public Law 110-180, section 105 ("NARIP"), the Brady Act was amended to establish the National Instant Criminal Background Check System (NICS). 14 NYCRR 543.1(b).

44. NARIP was developed to improve the completeness, automation, and transmission of records to state and federal systems used by the NICS. These include records of criminal history, felony convictions, warrants, protective orders, convictions for misdemeanors involving domestic violence and stalking, drug arrests and convictions, mental health adjudications, and other information that may disqualify an individual from possessing or receiving a firearm under federal law.[3]

45. The NICS Index contains records provided by local, state, and federal agencies about persons prohibited from receiving firearms under federal law.

46. NICS contains records concerning certain events, such as criminal convictions and mental health adjudications that may disqualify a person from purchasing a firearm.

47. All records in the NICS Index are considered "federally disqualifying records" and will prohibit the transfer of a firearm. 14 NYCRR 543.1(b).

48. The 2007 amendments also require participating states, in exchange for receiving federal funds for such reporting, to establish a "certificate of relief from disabilities" process to permit a person who has been or may be disqualified from possessing a firearm pursuant to 18 U.S.C. section 922 (d)(4) and (g)(4) to petition for relief from that disability. 14 NYCRR 543.1(b).

*The Gun Control Act – 18 USC 922(g) – Mental Health Disqualifying Events / Conditions*

49. The Gun Control Act (GCA), codified at 18 U.S.C. § 922(g), makes it unlawful for certain categories of persons to ship, transport, receive, or possess firearms or ammunition, to include any person, including individuals who have been adjudicated as a mental defective or have been committed to any mental institution.[4]

---

[3] https://bjs.ojp.gov/programs/nics-improvement-amendments-act#7k6m7f
[4] https://www.atf.gov/firearms/identify-prohibited-persons

50. Under federal law, "Committed to a mental institution" means "[a] formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. 27 C.F.R. § 478.11.

51. However, the term "committed to a mental institution" "**does not include** a person in a mental institution **for observation or a voluntary admission** to a mental institution." (emphasis added). See, 27 C.F.R. § 478.11.

*SAFE ACT Office Transmission of Mental Health Records to NICS*

52. New York Mental Hygiene Law § 7.09[5] authorizes the Office of Mental Health (OMH) to collect, retain, modify, or transmit data or records for inclusion in the NICS system for the purpose of responding to NICS queries regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 U.S.C. 921(a)(3).[6]

53. The records which the Office of Mental Health (OMH) is authorized by law to collect, retain, modify, or transmit *are expressly limited to* persons who have been *involuntarily committed* pursuant to article 9 or 10 of the Mental Hygiene Law, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act.[7]

54. Under MHL § 7.09 (j)(1) the OMH Commissioner, in cooperation with other applicable state agencies, shall collect, retain or modify data or records, and shall transmit such

---

[5] NY MHL 7.09(j)(1).
[6] 14 NYCRR § 543.1(c).
[7] 14 NYCRR § 543.1(c) (emphasis added).

data or records to (1) DCJS or to the FBI Criminal Justice Information Services Division (CJIS) for the purposes of responding to queries to the NICS system regarding attempts to purchase or otherwise take possession of firearms, as defined in 18 USC 921(a)(3), in accordance with applicable federal laws or regulations, or (2) DCJS, which may re-disclose such data and records only for determining whether a license issued pursuant to Penal Law § 400.00(11) should be denied, suspended or revoked or for determining whether a person is no longer permitted under federal or state law to possess a firearm. **Such records**, which may not be used for any other purpose, **shall include only** names and other non-clinical identifying information **of persons who have been involuntarily committed to a hospital** pursuant to MHL Article 9.[8, 9]

55. The records transmitted to NICS and CJIS[10] by OMH are considered by NICS to be "federally disqualifying records" and will prohibit the transfer of a firearm to such individual. 14 NYCRR 543.1(b).

56. Upon being contacted by a Federal firearm licensee (FFL) prior to transferring a firearm, NICS will provide information on whether a person is prohibited from receiving or possessing a firearm under State or Federal law. 14 NYCRR 543.1(b).

57. Prior to the transfer of a firearm through an FFL, an individual is required to complete ATF Form 4473, "Firearms Transaction Record" (Form 4473).[11]

---

[8] "[O]r section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter." NY MHL § 7.00(j)(1).

[9] Such records, which may not be used for any other purpose, shall include only names and other non-clinical identifying information of persons who have been involuntarily committed to a hospital pursuant to article nine of this chapter, or section four hundred two or subdivision two of section five hundred eight of the correction law, or article seven hundred thirty or section 330.20 of the criminal procedure law or sections 322.2 or 353.4 of the family court act, or to a secure treatment facility pursuant to article ten of this chapter.

[10] References to NICS and CJIS are collectively referred to hereafter as "NICS".

[11] https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download

58. Question 21(f) of Form 4473 is, "Have you ever been adjudicated as a mental defective OR have you ever been <u>committed</u> to a mental institution?" (emphasis added).[12]

59. The Form 4473 "NOTICES, INSTRUCTIONS, AND DEFINITIONS…Question 21(f)" provides,

> **"Committed to a Mental Institution:** A formal commitment of a person to a mental question by a court, board, commission, or other lawful authority. The term Permanent resident aliens and aliens legally admitted to the United States pursuant includes a commitment to a mental institution involuntarily. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. **The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.** (emphasis added).

60. An individual who has been admitted to a mental institution voluntarily has neither been "committed to a mental institution" nor "involuntarily committed."

61. An individual who has been admitted to a mental institution for "emergency observation and evaluation" has neither been "Committed to a Mental Institution" nor "involuntarily committed." See, MHL § 9.39, § 9.27, § 9.37, 27 C.F.R. § 478.11. See, *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 314 (W.D.N.Y. 2018) (the term "committed to a mental institution" "does not include [the placement of] a person in a mental institution for observation or a voluntary admission to a mental institution.").

62. Under MHL 9.39, an individual "Emergency admissions for immediate observation, care, and treatment", a hospital "may receive and retain therein as a patient for a

---

[12] Upon performing a background check, NICS will provide the FFL with one of 3 responses: "Proceed", "Deny" or "Delay". If an individual is listed in the NICS database as a person prohibited from purchasing, possessing, and/or receiving firearms (a "prohibited person"), NICS will issue a "Deny", which indicates to the FFL that the individual is prohibited from receiving and/or possessing firearms under state or federal law. A "Deny" response prohibits the FFL from transferring a firearm to such individual.

11

period of fifteen days any person **alleged to have a mental illness** for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others."[13](emphasis added).

63. An admission under MHL 9.39 "Emergency admissions for immediate observation, care, and treatment" does not fall within the definition of having been "Committed to a Mental Institution."

64. An admission under MHL 9.39 is not a finding or adjudication (formal or otherwise) that an individual *has* a mental illness.

65. Persons admitted to a hospital for evaluation and observation, and/or voluntarily, are not within the purview of 18 U.S.C. 922(g)(4).

66. Even if a court were to determine that there was "reasonable cause" to confine an individual under MHL 9.39, "such order entered by the court **shall not be deemed to be an adjudication that the patient is mentally ill**," but only a determination that there is reasonable cause to retain the patient for evaluation and observation. (emphasis added); see, MHL 9.39(a)(2).

67. The only records that OMH is authorized by law to collect, retain, modify, or transmit are expressly limited to persons who have been **involuntarily committed** pursuant to article 9 or 10 of the Mental Hygiene Law, article 730 or section 330.20 of the Criminal Procedure Law, section 402 or 508 of the Correction Law or section 322.2 or 353.4 of the Family Court Act. 14 NYCRR 543.1(b), which does not include MHL 9.39.

---

[13] "Likelihood of serious harm" shall mean: 1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear or serious physical harm." MHL § 9.37 (b).

68. Every denial and approval of a Certificate of Relief issued by the Panel Members contains the language:

> "The records which OMH transmits are **limited to persons** who have been **involuntarily committed** to a psychiatric hospital pursuant to Article 9 or 10 of the NYS Mental Hygiene Law (MHL), Article 730 or Section 330.20 of the NYS Criminal Procedure Law, Section 402 of or 508 of the NYS Correction Law or Sections 322.2 or 353.4 of the NYS Family Court Act."

(emphasis added).

69. By the plain language of the statutes, MHL 9.27[14] and 9.37[15] are the "involuntary admission" statutes.

70. Under MHL 9.37, the director of community services or the director's designee can involuntarily commit a person who, in his/her opinion, "***has*** a mental illness for which immediate inpatient care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or herself or others."

71. By its plain language, MHL 9.39, entitled "Emergency Admissions for Immediate Observation, Care, and Treatment" is not an "involuntary admission."[16]

72. Where an individual has been admitted to a hospital under MHL 9.39 for a period of evaluation and observation and then discharged, like Plaintiff was, without any conversion to an involuntary commitment under MHL 9.27 or 9.37, listing them in the NYS database and reporting them to NICS causing an absolute barrier to firearm possession, the individual's Second Amendment rights have been violated.

---

[14] Entitled, "Involuntary Admission on Medical Certification."
[15] Entitled, "Involuntary Admission on Certificate of a Director of Community Services or His Designee."
[16] https://1.next.westlaw.com/Browse/Home/StatutesCourtRules/NewYorkStatutesCourtRules?guid=NC61A4B20F8F511EBB65FC84C7B9807A6&transitionType=DocumentItem&contextData=(sc.Category)

**MATERIAL FACTS**

73. Plaintiff is 55 years of age, has no criminal convictions, and has never been the subject of an Order of Protection.

74. Other than the events described herein, Plaintiff has never been prohibited from purchasing or possessing firearms under federal or state law and he has no prior mental health-related history or related hospital admissions.

75. Plaintiff has been a lawful firearm owner and an avid hunter for virtually his entire adult life.

76. In April 2020, Plaintiff went to the gun store to purchase a new shotgun, at which time he completed the ATF Form 4473 for a federal background check to be performed through the National Instant Criminal Background Check System (NICS).

77. Plaintiff's transaction was denied by NICS because of, what he later learned was, a (false) report made to NICS by the SAFE Act Office that he had been "involuntarily committed to a mental hospital."

78. Plaintiff has never been involuntarily committed to a mental hospital.

79. Being "committed to a mental hospital" is a disqualifying event under 18 U.S.C. 922(d) and (g) and prohibits an individual from purchasing, receiving, transferring, and possessing firearms.

80. The event that caused Plaintiff's inclusion in the NYS reporting database was a 2014 admission to a hospital for an evaluation and observation under MHL 9.39.

81. In 2014, Plaintiff voluntarily drove himself to the hospital because he wanted to talk to someone about having recently lost his job.

82. There was no police involvement or allegations of violence or criminal activity.

83. Plaintiff was voluntarily admitted to the hospital on June 5, 2014 for "observation".

84. Plaintiff's intake records indicate the Chief Complaint as "Psychiatric Evaluation".

85. Plaintiff's blood test indicated that he was NEGATIVE for ethanol (BAC level = 0.0).

86. Plaintiff's psychosocial assessment determined that he was not homicidal – he was not a danger to others.

87. Plaintiff's psychosocial assessment noted that he that he expressed suicidal/self-harm thoughts - <u>without intent</u>; that he had "passive suicidal ideation" – he had made a passive comment about wanting to "drive his car into a wall."

88. Clearly, Plaintiff – who drove his car to the hospital – was not a danger to himself or his thoughts would easily have become a reality.

89. On June 7, 2014, Plaintiff reported, "I do feel depressed but when I say I want to drive my car into wall it's a figure of speech, I wouldn't ever do it, I wouldn't leave my kids…I lost my job back in December, my girl does not work, we have 2 kids, I just feel down, I've never felt this low before but I do not want to die."

90. Plaintiff was NEGATIVE for "alcohol/substance use, current overuse", "threats of suicide/self harm", "intentional self-injury/suicide attempt in past year", "violent threats towards others", "thoughts of harm towards others", "suicide plan", "plan to do harm towards others", "hopelessness", "erratic behaviors", and "other imminent risk factors."

91. Plaintiff was discharged from the hospital on June 9, 2014 "to home."

92. Plaintiff's medical records indicate that he was solely at the hospital "on a [Mental Hygiene Law] 9.39 status."

93. Plaintiff did not meet the criteria for conversion to an involuntary confinement under MHL 9.27 or 9.37.

94. Plaintiff never received any "Notice of Involuntary Admission" as required by MHL § 9.29 – because he was not involuntarily committed.

95. Lee, Barber, "T.T.", "C.B.', Doe 1, Doe 2, Doe 3, Doe 4 , and Doe 5 knew this information when their acts and failures to act violated Plaintiff's constitutional rights.

96. The hospital reported Plaintiff to the SAFE Act Office, which placed his personal identifying information in the NYS reporting database and, at some point, caused a negative report to NICS.

97. Doe 4 and Doe 5 learned at or near the time of the event that Plaintiff was reported to the NYS database.

98. Doe 4 and Doe 5 failed to provide Plaintiff with any notice of such event due to his/her deliberate indifference to Plaintiff's civil rights.

99. Doe 4, and Doe 5 failed to conduct any investigation into whether Plaintiff has actually been involuntarily committed under MHL 9.27 or 9.37.

100. Plaintiff never received any notice from Doe 4 or Doe 5 that he was listed in the NYS database and being reported to NICS as a prohibited person.

101. On October 30, 2020, Plaintiff applied to the SAFE Act Office for a Certificate of Relief from Firearms Disabilities.

102. Plaintiff provided, among other documents, his medical records from his 2014 admission, which showed conclusively that he had not been involuntarily admitted, that his admission was voluntary and limited to a period of evaluation and observation under MHL 9.39.

103. It is the custom and practice of the SAFE Act Office, and the Panel Members, that application packets, including medical records, are reduced to a narrative "summary report" by a SAFE Act Office staff member.

104. It is the custom and practice of the Panel Members to reply on the narrative "summary report" to render their determinations about whether an applicant should have his/her Second Amendment rights restored.

105. Plaintiff's application packet was reduced to a narrative "summary report."

106. Plaintiff's "summary report" was provided to the Panel Members, which included defendants Dr. Lee, Barber, "T.T.", "C.B.", Doe 1, Doe 2, and Doe 3.

107. The Panel Members never met or spoke with Plaintiff.

108. The Panel Members never conducted a clinical evaluation of Plaintiff.

109. The Panel Members relied on a "summary report" to make their determination as to whether Plaintiff's Second Amendment rights should be restored.

110. The Panel Members disregarded the fact that Plaintiff was never involuntarily committed under the State's *only* "involuntary commitment" statutes, to wit, MHL 9.27 and 9.37.

111. The Panel Members disregarded the fact that Plaintiff was voluntarily admitted for evaluation and observation under MHL 9.39.

112. It is the policy and practice of the defendants to intentionally keep MHL 9.39 individuals in the NYS database; even when an individual's 9.39 status is brought to their attention – which should result in an automatic removal from the database, Defendants disregard state and federal statutes, as well as the Second Amendment, and continue to violate individuals' constitutional rights.

113. The Panel Members denied Plaintiff's application.

114. Plaintiff challenged the agency's administrative determination in New York State Supreme Court, Albany County, *A.G. v. New York State Office of Mental Health and Office of NICS Appeals and SAFE Act*, Index No. 904918-21 under CPLR Article 78.

115. Plaintiff did not pursue any constitutional claims in his Article 78, a "special proceeding" confined to the issue of whether the agency determination was "arbitrary and capricious."

116. The state court held that the agency's decision was arbitrary and capricious, for several reasons including that the "history of A.G.'s case does not support the inference that he is a danger to himself or others." The court further ordered the agency to issue the Certificate of Relief to Plaintiff.

117. The SAFE Act Office issued a Certificate of Relief to Plaintiff dated November 6, 2023.

118. As a result of the defendants' actions and inaction, as detailed herein, Plaintiff has been caused to suffer the loss of rights presumptively protected by the Second and Fourteenth Amendment, the loss of the use and enjoyment of his property (firearms), the loss of peace of mind associated with firearm ownership and the ability to protect himself and his family, the inability to engage in hunting and target practice, the violation of his right to prompt notice and an opportunity to be heard, garden variety emotional damages in the nature of upset, and economic losses of approximately $9,000.

## AS AND FOR A FIRST CAUSE OF ACTION

### [Second and Fourteenth Amendments, 42 U.S.C. § 1983]

119. Repeats and realleges paragraphs 1 through 118 as if set forth in their entirety herein.

120. Under the theory that each of the defendants, individually and collectively, are liable to Plaintiff for violating his Second Amendment rights, as applied to the states through the Fourteenth Amendment. 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
### [Fourteenth Amendment – Postdeprivation Due Process, 42 U.S.C. § 1983]

121. Repeats and realleges paragraphs 1 through 120 as if set forth in their entirety herein.

122. Under the theory that Defendants Doe 4 and Doe 5 are liable to Plaintiff for violating his Fourteenth Amendment right to due process. 42 U.S.C. § 1983.

WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment and order:

- Awarding Plaintiff compensatory damages against the individual defendants;

- Awarding Plaintiff nominal damages against the individual defendants;

- Awarding Plaintiff economic damages against the individual defendants;

- Awarding Plaintiff punitive damages against the individual defendants;

- Declaring that Plaintiff is the prevailing party of this action for purposes of an award of reasonable attorney's fees under 42 U.S.C. § 1988;

- Awarding Plaintiff reasonable statutory attorney's fees under 42 U.S.C. § 1988;

- Awarding Plaintiff costs and disbursements; and

- Such other, further, and different relief as this Court may deem just and proper.

Dated: February 9, 2024
      Scarsdale, New York

                                        THE BELLANTONI LAW FIRM, PLLC
                                        *Attorneys for Plaintiff*

By:   *Amy L. Bellantoni*
        Amy L. Bellantoni, Esq.
        2 Overhill Road, Suite 400
        Scarsdale, New York 10583
        abell@bellantoni-law.com