UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY GIANNAVOLA,

       Plaintiff,

    v.

LI-WEN GRACE LEE, M.D.,
individually, CARMEN BARBER,
individually, "T.T.," individually, "C.B.,"
individually, and DOES 1–5,
individually,

       Defendants.

24-CV-6096-MAV
DECISION AND ORDER

---

## INTRODUCTION

On February 9, 2024, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 for alleged violations of his Second and Fourteenth Amendment rights. ECF No. 1. His claims arise from allegations that in April 2020, Plaintiff was prevented from purchasing a new shotgun because the results of his federal background check indicated that he had been "committed to a mental institution"—a "disqualifying event" under federal gun law 18 U.S.C. §§ 922(d)(4) and (g)(4). ECF No. 1 at ¶¶ 2–7, 37, 81, 92. He was listed as a "prohibited person" in the National Instant Criminal Background Check System ("NICS") based on a report from the New York State Office of Mental Health ("OMH") identifying that, in June 2014, Plaintiff had been "involuntarily committed" to the hospital pursuant to New York Mental Hygiene Law ("MHL") § 9.39. *Id.* at ¶¶ 3, 43–55; *see* 18 U.S.C. § 922(t); 34 U.S.C. § 40901; MHL § 7.09(j)(l).

1

In October 2020, Plaintiff applied to receive a Certificate of Relief from Firearms Disabilities ("Certificate of Relief") from the New York Office of NICS Appeals and SAFE Act[1] (the "SAFE Act Office")—a division of OMH. ECF No. 1 at 2–3. A panel from the SAFE Act Office denied Plaintiff's application for a Certificate of Relief in February 2021. *Id.* at 2. When he challenged this denial through an Article 78 proceeding in state court, the panel's decision was reversed, and he was issued a Certificate of Relief ("State Art. 78 Decision"). *See id.* at ¶¶ 114–16.

Plaintiff then brought this federal action against named and unnamed members of the SAFE Act Office panel that denied his 2020 application for a Certificate of Relief (collectively, the "Panel Defendants") and two unnamed employees of OMH (Doe 4 and Doe 5) who allegedly failed to notify Plaintiff that his 2014 hospitalization had been reported to NICS and failed to "investigat[e]" whether a report should have been made at all. *Id.* at ¶¶ 11–24. He brings a 42 U.S.C. § 1983 claim against the Panel Defendants for violating his Second Amendment rights, and a § 1983 claim against Does 4 and 5 for violating his rights to due process under the Fourteenth Amendment. *Id.* at 19. Plaintiff seeks "compensatory, economic, and punitive damages, costs, and reasonable statutory attorney's fees." *Id.* at 1, 19.

Before the court is a March 2024 motion to dismiss filed by Defendant Li-Wen Grace Lee, Defendant Carmen Barber, and Defendant Tony Trahan (captioned "T.T.") (collectively, the "MTD Defendants"), each of whom is alleged to be a Panel Defendant. ECF No. 7; ECF No. 1 at ¶¶ 11–15. Plaintiff filed an objection on April 8,

---

[1] New York's Secure Ammunition and Firearms Enforcement Act of 2013 (the "SAFE Act").

2024, ECF No. 10, and the MTD Defendants filed a reply on April 23, 2024, ECF No. 11. This case was transferred to the undersigned on February 11, 2025. ECF No. 12.

For the following reasons, the motion to dismiss is granted. Plaintiff's Second Amendment claim against the Panel Defendants and his Due Process claim against Does 4 and 5 are dismissed with prejudice.

## BACKGROUND

The following facts are taken from Plaintiff's complaint and the September 2023 decision from the State of New York Supreme Court, Albany County, which the complaint incorporates by reference. The Court accepts the facts alleged in Plaintiff's complaint as true for the purpose of resolving the instant motion to dismiss. However, the legal conclusions or opinions couched as factual allegations in Plaintiff's complaint do not carry the same presumption of truthfulness. *See In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## I.    Content Considered

As noted, Plaintiff's complaint incorporates by reference the September 2023 decision from the State of New York Supreme Court, Albany County, which found that the SAFE Act Office's decision to deny Plaintiff's 2020 application for a Certificate of Relief from Firearms Disabilities was arbitrary and capricious. ECF No. 1 at ¶¶ 114–16; *see* State Art. 78 Decision at 13. The Court is entitled to consider all materials incorporated by reference in a plaintiff's complaint to resolve a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quotation omitted));

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (concluding that "generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered," but "[w]here plaintiff has actual notice of all the information . . . and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

The Court would thus be free to consider the full text of the State Art. 78 Decision, which, notably, paints a substantially different picture of Plaintiff's June 2014 hospital admission than the facts Plaintiff himself alleged in his complaint.[2] The Court will nevertheless rely on Plaintiff's own factual allegations about his June 2014 hospitalization made within the four corners of the complaint because as will be discussed, even when doing so, Plaintiff's Second Amendment claim must be dismissed. The Court includes certain facts from the incorporated State Art. 78 Decision to establish the procedural history of the case and as otherwise necessary to resolve the instant motion to dismiss.

---

[2] For example: the state court decision states, *inter alia,* that Plaintiff "was diagnosed with an adjustment disorder and with an alcohol abuse disorder," that "he told outpatient treatment providers that he wanted to hurt the people he used to work for," that the "treatment providers were concerned and recommend that [Plaintiff] go to Rochester General Hospital ("RGH") for more extensive mental health treatment," that Plaintiff "drove himself to RGH and agreed to an assessment . . . [during which he] admitted that he did not want to live and that he wanted to hurt some of his former employers," that although Plaintiff "voiced no suicidal or homicidal plan . . . [i]t was suspected that [he] had an 'active suicidal ideation' and a 'passive homicidal ideation,' and he was held for further observation," and that "[o]n June 6, 2014, a physician at RGH signed an Emergency Admission and directed that [Plaintiff] be involuntarily committed pursuant to (MHL) § 9.39 . . . not[ing] that [Plaintiff] presented with significantly increased depression and alcohol use and had suicidal ideation." State Art. 78 Decision at 2.

4

## II.   Substance of Allegations Pleaded

According to the four corners of Plaintiff's complaint, the circumstances of his 2014 hospitalization and subsequent relevant events occurred as follows.

In June 2014, Plaintiff voluntarily drove himself to a hospital because he wanted to talk to someone about having recently lost his job. ECF No. 1 at ¶¶ 81, 83. There was no police involvement or allegations of violence or criminal activity. *Id.* at ¶ 82. On June 5, 2014, Plaintiff was evaluated and admitted to the hospital for "observation." *Id.* at ¶¶ 83, 86–87. His intake records reflect that the "Chief Complaint" was "Psychiatric Evaluation." *Id.* at ¶ 84. Plaintiff's psychological assessment determined that he was not homicidal, that he had "expressed suicidal/self-harm thoughts—without intent, that he had 'passive suicidal ideation,'" and had "made a passive comment about wanting to 'drive his car into a wall.'" *Id.* at ¶¶ 86–87 (emphasis omitted). His "medical records indicated that he was solely at the hospital" pursuant to MHL § 9.39, and he did not receive a "Notice of Involuntary Admission" as required by MHL § 9.27 before admission. *Id.* at ¶¶ 92, 94.

On June 7, Plaintiff reported: "I do feel depressed but when I say I was going to drive my car into [a] wall, it's a figure or speech. I wouldn't ever do it. I wouldn't leave my kids . . . I lost my job back in December, my girl does not work, we have [two] kids. I just feel down. I've never felt this low before, but I do not want to die. *Id.* at ¶ 89 (punctuation cleaned up). At some point, Plaintiff was assessed again and was found "negative" for "alcohol/substance use, current overuse," "threats of suicide/self-harm," "intentional self-injury/suicide attempt in past year," "violent threats towards

5

others," "thoughts of harm towards others," "suicide plan," "plan to do harm towards others," "hopelessness," "erratic behaviors," and "other imminent risk factors." *Id.* at ¶ 90. On June 9, 2014, the hospital discharged Plaintiff "to home." *Id.* at ¶ 91.

As a result of his commitment under MHL § 9.39, the hospital reported him to the SAFE Act Office, "which placed his personal identifying information in the NYS reporting database, and at some point, caused a negative report in NICS." *Id.* at ¶¶ 92, 96. Does 4 and 5, who were employed by OMH, knew that Plaintiff's hospitalization had been reported to NICS but failed to provide Plaintiff with any notice at that time of such reporting and "failed to conduct any investigation into whether Plaintiff ha[d] actually been involuntarily committed under MHL [§§] 9.27 or 9.37." *Id.* at ¶¶ 18, 97–100.

Plaintiff was unaware that his § 9.39 hospitalization caused a report to NICS, which impacted his rights to purchase or possess firearms or ammunition, until approximately six years later when Plaintiff attempted to purchase a new shotgun. *Id.* at ¶¶ 3, 100. In April 2020, Plaintiff, an avid hunter and firearm owner for most of his adult life, submitted to a federal background check through NICS as required to facilitate his intended purchase. *Id.* at ¶¶ 3, 75, 76. The transaction was denied because NICS reflected that he had been "involuntarily committed to a mental hospital." *Id.* at ¶ 77.

On October 30, 2020, Plaintiff applied to the SAFE Act Office for a Certificate of Relief. *Id.* at ¶ 101. The MTD Defendants, Defendant "C.B.," and Does 1, 2, and/or 3 (collectively, the Panel Defendants) were on the panel that considered Plaintiff's

application. *Id.* at ¶ 106. The Panel Defendants denied Plaintiff's application for a Certificate of Relief. *Id.* at ¶ 113. Plaintiff appealed the panel's decision to the State of New York Supreme Court, Albany County, pursuant to N.Y. C.P.L.R. Article 78 and MHL § 7.09(j)(2). *Id.* at ¶ 114. In September 2023, the state court held that the panel's decision was arbitrary and capricious because Plaintiff "adequately demonstrated that his 'record and reputation are such that [he] will not be likely to act in a manner dangerous to public safety' and that granting him relief from the firearms disabilities imposed under 18 U.S.C. § 922(d)(4) and (g)(4) will 'not be contrary to public safety.'" (the "State Art. 78 Decision"). *See id.*; State Art. 78 Decision at 13. The state court thus granted his petition and ordered that a Certificate of Relief be issued and NICS be notified accordingly. ECF No. 1 at ¶ 116; State Art. 78 Decision at 13. This federal lawsuit followed.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d at 95.

# DISCUSSION

## I.    Statutory and Regulatory Landscape

Under 18 U.S.C. § 922, certain persons, including those who have been "adjudicated as a mental defective" or have been "committed to any mental institution," are prohibited from shipping, transporting, receiving, or possessing firearms or ammunition. 18 U.S.C. § 922(g)(4). Section 922 also makes it unlawful for any person to "sell or otherwise dispose of any firearm or ammunition" to any person who has been "adjudicated as a mental defective" or has been "committed to any mental institution." *Id.* § 922(d)(4).

Section 922 does not define "committed to a mental institution" itself, and the question of whether someone has been so "committed" is one of federal law. *See Escamilla v. United States*, 62 F.4th 367, 376 (7th Cir. 2023). Courts look to the state law that governed a person's admission and then consider whether the state law is consistent with federal policy. *Id.*; *see Phelps v. Bosco*, 711 F. App'x 63, 64 (2d Cir. 2018); *United States v. Waters*, 23 F.3d 29, 31 (2d Cir. 1994). Here, regulations of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") provide helpful guidance[3] as well, defining "committed to a mental institution" as:

> A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not

---

[3] Because 18 U.S.C. § 922 is a criminal statute, the court is not required to defer to the definition provided by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). *See United States v. Apel*, 571 U.S. 359, 369 (2014); *Escamilla*, 62 F.4th at 376. Both parties reference and rely on this definition in their motion papers.

include a person in a mental institution for observation or a voluntary admission to a mental institution.

27 C.F.R. § 478.11.

NICS is a federal database that helps to administer § 922 by allowing firearms dealers and the authorities to search the backgrounds of prospective firearm purchasers for disqualifying information. *See* 18 U.S.C. § 922(t); 34 U.S.C. § 40901; *see also Matter of Colihan v. State of New York,* N.Y.S. 3d 359 (2022). State agencies, such as the OMH in New York, are directed to transmit to NICS the names and nonclinical identifying information of individuals who have been "committed to a mental institution." *See e.g.,* MHL § 7.09(j)(1). When a firearms dealer runs a federal background check on a potential customer, NICS will identify "prohibited persons" pursuant to 18 U.S.C. §§ 922(d)(4), (g)(4) based on information the database received from the state agencies. That is what allegedly occurred here when Plaintiff attempted to purchase a shotgun in April 2020 after his hospitalization in 2014 pursuant to MHL § 9.39.

New York's MHL § 9.39, entitled "Emergency admissions for immediate observation, care, and treatment," provides:

> (a) The director of any hospital maintaining adequate staff and facilities for the observation, examination, care, and treatment of persons alleged to be mentally ill and approved by the commissioner to receive and retain patients pursuant to this section may receive and retain therein as a patient for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or others. "Likelihood to result in serious harm" as used in this article shall mean:

> 1. substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that he is dangerous to himself, or
>
> 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.
>
> The director shall cause to be entered upon the hospital records the name of the person or persons, if any, who have brought such person to the hospital and the details of the circumstances leading to the hospitalization of such person.

MHL § 9.39(a). Plaintiff's lawsuit arises from this subsection.

## II.    Clarification of Plaintiff's Claims

Neither of Plaintiff's two pleaded claims expressly identifies what conduct Defendants are alleged to have taken or failed to have taken in violation of his constitutional rights. *See* ECF No. 1 at ¶¶ 119–24 (each count consisting of only two paragraphs, stating merely that (1) Plaintiff repeats and realleges earlier paragraphs and (2) "[u]nder the theory that [the Panel Defendants, or Does 4 and 5], are liable to Plaintiff for violating [his Second or Fourteenth Amendment] rights"). From the allegations elsewhere in the complaint, the Court understands Plaintiff to be taking issue with four "events": (1) that his 2014 hospitalization pursuant to MHL § 9.39 was reported to NICS at all; (2) that Does 4 and 5 did not notify him that a report was made to NICS or provide him with an opportunity to be heard; (3) that Does 4 and 5 did not conduct their own investigation to confirm whether a report to NICS should have been made; and (4) that the Panel Defendants denied his 2020 application for a Certificate of Relief.

The sole reason pleaded as to why the conduct complained of in events 1, 3, and 4 was illegal is Plaintiff's position that his 2014 hospitalization pursuant to MHL § 9.39 was not an "involuntary commitment." *E.g., id.* at 6–17. Plaintiff does not allege that he should not have been admitted to the hospital under MHL § 9.39 in June 2014 because he did not meet its statutory requirements, nor has he sued any hospital official or the hospital itself.[4] Rather, as mentioned, his complaint acknowledges that he was admitted under MHL § 9.39, but argues, with legal conclusions couched as factual allegations, that his admission was not an "involuntary commitment" as pertinent to the firearm restrictions that stem from such a commitment. *E.g., id.* at ¶¶ 6, 61–65, 71–72, 78, 92, 110–12.

As the MTD Defendants point out, Plaintiff has not pleaded a discernable facial or as-applied constitutional challenge to MHL § 9.39, MHL § 7.09(j)(l), 18 U.S.C. §§ 922(d)(4) or (g)(4), 27 C.F.R. § 478.11, or to any other federal or state statute or regulation implicated by his case. *See* ECF Nos. 1, 7-1 at 11, 10. For example, Plaintiff does not allege that it is unconstitutional for individuals who have been "involuntarily committed" to a hospital to be prohibited from purchasing or possessing a firearm or ammunition. *See* 18 U.S.C. §§ 922(d)(4), (g)(4); 27 C.F.R. § 478.11. Rather, he alleges that he was misidentified as a person who was "involuntarily committed." *See Phelps*, 711 F. App'x at 64–65 (affirming grant of summary judgment to all defendants on the grounds that plaintiff was properly denied access to a firearm because he had been "committed to a mental institution" under 18 U.S.C. §§ 922(d)(4), (g)(4) when he was

---

[4] The Court is not commenting on whether such claims would be viable but is merely clarifying Plaintiff's federal complaint.

hospitalized pursuant to MHL § 9.39, and concluding that plaintiff's arguments that MHL § 9.39 admissions are not "involuntary" were not "constitutional challenge[s]").

Furthermore, even if he had set forth a clear constitutional challenge, Plaintiff's lack of compliance with Federal Rule of Civil Procedure 5.1(a) would preclude the Court's consideration of it. *See, e.g., Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014) (even where plaintiff set forth clear arguments in his filings challenging the constitutionally of the Federal Arbitration Act, including "that the FAA violates the United States and Ohio Constitutions because it unlawfully impedes a person's right to a trial by jury," the court declined to consider such arguments because plaintiff had not filed the notice required by Fed. R. Civ. P. 5.1(a)); *Pierson v. Rogow*, No. 15-61312-CIV, 2019 WL 1112293, at *7 (S.D. Fla. Jan. 23, 2019), *report and recommendation adopted*, 2019 WL 2253304 (S.D. Fla. Mar. 25, 2019) ("There is no indication that Plaintiff has filed such a notice [under Rule 5.1(a)]. Accordingly, this Court should not consider Plaintiff's constitutional arguments."); *Carbajal v. Wells Fargo Bank, N.A.,* No. EP-19-CV-00083-DCG, 2020 WL 13413199, at *9 (W.D. Tex. May 5, 2020) (declining to consider plaintiffs' argument that "Texas Rule of Civil Procedure 736 and the expedited foreclosure procedure violated their due process and equal protection rights because defendants in these proceedings lack the ability to conduct discovery, examine witnesses, and appeal the results of these proceedings" because plaintiffs had not filed the notice required by Fed. R. Civ. P. 5.1(a)).

Rule 5.1(a) sets forth requirements for filings that raise a constitutional challenge to a statute, stating:

> A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute *must* promptly:
>
> (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>
>> (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or
>>
>> (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
> (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.

Fed. R. Civ. P. 5.1(a) (emphasis added). Plaintiff is incorrect that this rule does not apply to his complaint as pleaded or to his papers filed in opposition to the instant motion. Plaintiff has not sued the United States, one of its agencies, or one of its officers or employees in an official capacity, therefore, a notice of constitutional question would have been required to the extent Plaintiff intended to challenge the constitutionality of a federal statute or regulation. Fed. R. Civ. P. 5.1(a)(1)(A); ECF No. 1 at 1. Nor has Plaintiff sued New York State, one of its agencies, or one of its officers or employees in an official capacity, therefore, a notice of constitutional question would have been required to the extent Plaintiff intended to challenge the constitutionality of a New York statute or regulation. Fed. R. Civ. P. 5.1(a)(1)(B); ECF

No. 1 at 1 (all defendants sued by Plaintiff are sued in their individual capacities). Plaintiff did not file a notice of constitutional question, and by extension, has also failed to comply with the service requirements of Rule 5.1(a)(2).

Contrary to Plaintiff's position, the fact that the New York State Attorney General's Office ("N.Y. A.G.'s Office") represents the MTD Defendants on Plaintiff's § 1983 claim does not relieve Plaintiff of his obligations under Rule 5.1(a). The N.Y. A.G.'s Office is entitled to service of a notice of constitutional question so that it may intervene on its own behalf to counter arguments that a particular state statute is unconstitutional. Fed. R. Civ. P. 5.1(a), (c).

Because the Court concludes that Plaintiff has not raised any facial or as-applied challenges to a federal or state statute, the Court declines to wade into constitutional questions or into whether Plaintiff could have raised any such constitutional challenges in his Article 78 proceeding before the state court. *See, e.g., Phelps,* 711 F. App'x at 65 ("Phelps did not raise a constitutional challenge to the state's conduct on appeal. Such a challenge would present complex issues, whether under the Second Amendment or the Due Process Clause."); *Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016) (an *en banc* decision considering an as-applied challenge to § 922(g)(4) in which eight separate opinions were filed); *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 71 (2d Cir. 1990) (concluding that while facial challenges to the constitutionality of a statute are improper in the Article 78 context, "the question of whether the statute has been *applied* in an unconstitutional fashion may be raised directly in an Article 78 proceeding."); *Corbett v. City of New York*, No.

14

18 CIV. 7022 (KPF), 2019 WL 2502056, at *5 (S.D.N.Y. June 17, 2019), *aff'd*, 816 F. App'x 551 (2d Cir. 2020) (discussing a "hybrid" Article 78 proceeding, and noting "constitutional issues can be decided in Article 78 proceedings. In particular, an Article 78 proceeding is an appropriate forum for determining whether a statute is unconstitutional as applied to the petitioner." (quotation omitted)); *see also Whitfield v. City of New York*, 96 F.4th 504, 523–29 (2d Cir. 2024) (discussing in detail and clarifying the standard of assessing *res judicata* implications of Article 78 proceedings on a subsequent § 1983 action).

Having clarified the four events that Plaintiff alleges violated his constitutional rights and that Plaintiff has not raised, let alone properly noticed, any constitutional challenges to a federal or state statute, the Court next turns to the central argument underlying most of Plaintiff's alleged grievances.

### III.   MHL § 9.39 as an Involuntary Commitment

Plaintiff's fundamental argument as to why events 1, 3, and 4 are alleged to have violated his constitutional rights is that his MHL § 9.39 hospitalization in June 2014 was not an "involuntary commitment" and, accordingly, that said hospitalization did not carry with it any firearms disabilities as contemplated by 18 U.S.C. §§ 922(d)(4) and (g)(4). The MTD Defendants argue that they are entitled to absolute judicial immunity and qualified immunity, and that Plaintiff is estopped from arguing he was never involuntarily committed because Plaintiff made the same argument in his Article 78 proceeding that he was not involuntarily committed, which the state court rejected. ECF No. 7-1 at 13–21.

Because Plaintiff's core argument is incorrect as a matter of law, his claims based on this faulty legal premise cannot survive a motion to dismiss. Fed. R. Civ. P. 12(b)(6). Taking the facts alleged by Plaintiff in his complaint as true, he was admitted to a hospital under MHL § 9.39, and this commitment was the reason why he was placed in the NICS database, resulting in his inability to possess or purchase firearms. *See* 18 U.S.C. §§ 922(d)(4), (g)(4).

It is well-established in the Second Circuit and New York state courts that a hospitalization pursuant to MHL § 9.39 is an "involuntary commitment" by an "other lawful authority" and, thus, properly triggers the firearms restrictions set forth in 18 U.S.C. §§ 922(d)(4) and (g)(4). *See Matter of Colihan,* 211 A.D.3d at 1436 ("Courts have consistently understood [MHL] § 9.39 to be one of the several sections of that law that authorize involuntary civil commitment."); *Matter of Gardner v. Bassett Med. Ctr.*, 148 A.D.3d 1331, 1334 (3d Dep't 2017); *Matter of George L.,* 85 N.Y.2d 295, 305 n.5 (1995); *Phelps*, 711 F. App'x at 64 ("Like Section 9.27, Section 9.39 creates a procedure to admit an individual into a hospital against her will when her mental illness presents a serious danger to herself or others."); *Oliver v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 188 (2d Cir. 2005); *Rodriguez v. City of New York*, 72 F.3d 1051, 1061–63 (2d Cir. 1995); *Goetz v. Crosson,* 967 F.2d 29, 32 (2d Cir. 1992); *Project Release v. Prevost*, 722 F.2d 960, 970–71 (2d Cir. 1983); *Montgomery v. Cuomo*, 291 F. Supp. 3d 303, 311–12 (W.D.N.Y. 2018); *see also Escamilla*, 62 F.4th at 374 ("The Second Circuit and New York courts have uniformly characterized admission under § 9.39 as involuntary.").

16

Plaintiff raised several arguments in response to the instant motion to dismiss asserting why MHL § 9.39 should not be deemed an "involuntary commitment"—all of which have been heard and rejected by other courts dealing with similar claims. *Compare, e.g.,* ECF No. 1 at ¶¶ 81–91 (describing how Plaintiff "voluntarily drove himself to the hospital" without police involvement), *with Matter of Colihan,* 211 A.D.3d at 1437 ("Although petitioner may have been cooperative with the admission process, such cooperation does not render an admission 'voluntary.'"), *and Escamilla,* 62 F.4th at 374 (rejecting plaintiff's argument that "when a patient willingly receives care and treatment, an admission under § 9.39 can be considered voluntary in that particular circumstance," and "join[ing] the Second Circuit and New York courts in concluding that commitment under § 9.39 is involuntary regardless of the committed person's subjective intent.").

The reasoning in the plethora of cases on this topic applies to Plaintiff's core argument here. The New York legislature, through MHL § 9.39, delegated to hospital directors the lawful authority to commit patients alleged to have a mental illness who are likely to cause serious harm to themselves or others on an emergency basis. Regardless of how an individual arrives at the hospital or his subjective intent, it is the hospital's decision whether to commit the person under MHL § 9.39, and if it does so, the commitment is decidedly involuntary. Plaintiff's emergency commitment under MHL § 9.39 was "for his own safety because it prevented him from suddenly changing his mind, walking out, and harming himself or someone else." *Escamilla,* 62 F.4th at 374. In contrast, had Plaintiff been admitted under MHL § 9.13, which

governs "Voluntary Admissions," if he had decided to leave the hospital, the hospital director must have "promptly release[d]" him. MHL § 9.13(b); *see also* MHL § 9.13(a) (unlike § 9.39, voluntary admission only requires an individual to "make [a] written application"—there is no heightened finding that a physician must make before the patient is committed to the hospital).

Furthermore, MHL § 9.39 expressly provides for an "emergency" involuntary commitment for a short period of time—a maximum of 15 days—to address the "immediate" need for observation, care, and treatment in a hospital of a person alleged to have a mental illness "which is likely to result in serious harm to himself or others." MHL § 9.39(a)–(b). "Within fifteen days of arrival at the hospital, if a determination is made that the person is not in need of involuntary care and treatment, he shall be discharged unless he agrees to remain as a voluntary or informal patient." MHL § 9.39(b). If after those initial 15 days, a patient is "in need of involuntary care and treatment and does not agree to remain as a voluntary or informal patient," he can be further retained only "by admission to such hospital or another appropriate hospital pursuant to the provisions governing involuntary admission on application supported by medical certification *and* subject to the provisions for notice, hearing, review, and judicial approval of retention or transfer and retention governing such admissions." *Id.* (emphasis added).

The provisions of § 9.39 plainly contemplate that a determination of whether "immediate observation, care, and treatment" is needed is not synonymous with the patient's subjective intent or willingness to remain at the hospital. It is also plain

that the New York legislature provided patients with additional due process protections if an involuntary commitment needed to extend beyond 15 days. MHL § 9.39(b). That the legislature did so does not mean that the initial "emergency" admission under MHL § 9.39, applicable for a maximum of 15 days, is not also an involuntary commitment—to address the immediate need for observation, care, and treatment in a hospital of a person alleged to have a mental illness which is likely to result in serious harm to himself or others.

Accordingly, Plaintiff fails to state a claim against the Panel Defendants for violating his Second Amendment rights by denying his 2020 application for a Certificate of Relief on the grounds that he was never involuntarily committed (event 4).[5]

Similarly, a claim that Plaintiff's 2014 hospitalization never should have been reported to NICS in the first instance (event 1) fails as well. *See Phelps*, 711 F. App'x at 64–65 (affirming grant of summary judgment to all defendants on the grounds that

---

[5] The Court notes that even though the state court held that the SAFE Act Office panel erred in denying Plaintiff relief from firearms disabilities, the deficiencies in the Panel Defendants' initial reasoning had nothing to do with Plaintiff being improperly classified as "involuntarily committed" and therefore that he should have never had firearms disabilities imposed on him from the outset. *See id.* at 9–10. In fact, the state court concluded multiple times that Plaintiff's admission to the hospital in June 2014 pursuant to MHL § 9.39 was an "involuntary commitment." *Id.* at ¶¶ 4 ("Prior to his involuntary commitment, he had been a lawful owner of firearms for decades."); 7 ("Commitment pursuant to [MHL] § 9.39 has been recognized as 'a formal commitment by other lawful authority' and therefore serves as a valid basis for denying an individual the right to possess, receive, or purchase a firearm."); 9 ("[I]n June of 2014, a physician and a psychiatrist determined that there was reasonable cause to believe [Plaintiff] was a danger to himself (though not others) and involuntarily committed him. Two days later, mental health professionals determined that [Plaintiff] no longer posed such a risk and released him."). The state court instead concluded that the evidence before the Panel Defendants, six years after Plaintiff's admission to the hospital, demonstrated that he would "not be likely to act in a manner dangerous to public safety" and that granting relief from the firearms disabilities imposed under 18 U.S.C. §§ 922(d)(4) and (g)(4) "would not be contrary to public safety." *Id.* at 13; *see* MHL § 7.09(j)(2).

plaintiff was properly denied access to a firearm because he had been "committed to a mental institution" under 18 U.S.C. §§ 922(d)(4), (g)(4) when he was hospitalized pursuant to MHL § 9.39, and concluding that plaintiff's arguments that MHL § 9.39 admissions are not "involuntary" were not "constitutional challenge[s]"). Moreover, Plaintiff did not allege any facts from which the Court could plausibly infer that any of the Panel Defendants, or Does 4 and 5, were responsible for the initial OMH report of Plaintiff's emergency hospitalization to NICS, and, in any case, it is clear from the face of the complaint that Plaintiff's apparent challenges to event 1 are untimely. *See, e.g.*, ECF No. 1 at ¶¶ 11, 13, 14, 15(1), 15(2)[6] (alleging that the Panel Defendants were Safe Act Office panel members "who considered, and denied, Plaintiff's request to be removed from the NYS reporting database"), 96 ("The hospital reported Plaintiff to the SAFE Act Office, which placed his personal identifying information in the NYS reporting database and, at some point, caused a negative report to NICS."); 97 ("Doe 4 and Doe 5 learned at or near the time of the event that Plaintiff was reported to the NYS database."); *see also supra* Section IV (discussing the timeliness of Plaintiff's federal action).

Further, a claim against Does 4 and 5 based on the allegation that they did not investigate to confirm that Plaintiff had been involuntarily committed (event 3) also fails to state a claim on which relief may be granted. Even assuming Does 4 and 5 had an obligation to "investigat[e]," such an investigation would have confirmed that

---

[6] Plaintiff's complaint contains two paragraphs numbered "15" that contain different factual allegations.

Plaintiff had been "involuntarily committed" because he had been committed pursuant to MHL § 9.39.

The Court now turns to Plaintiff's last remaining pleaded grievance.

## IV.    Due Process

Plaintiff lastly seeks to hold Does 4 and 5, both employees of OMH, liable under § 1983 for their alleged failures to notify Plaintiff that he had been reported to NICS (event 2), thus depriving Plaintiff of his rights to due process. ECF No. 1 at ¶¶ 98, 100, 121–22. This claim fails to state a claim on which relief may be granted.

Plaintiff's opposition to the instant motion to dismiss does not address the viability of his due process claim. *See* ECF No. 10. The MTD Defendants argued that this claim against the unnamed OMH employees is untimely. *See Fleischman v. Wyoming Cnty.*, No. 1:21-CV-00318, 2021 WL 5916009, at *1 (W.D.N.Y. Dec. 15, 2021) (addressing defendant's standing to move to dismiss claims against unnamed defendants); *Ruiz-Rivera v. United States*, 212 F. Supp. 3d 293, 295 (D.P.R. 2015) (same); *Seagroves v. Corr. Corp. of Am.*, 2012 WL 2573468, at *1 (M.D. Tenn. July 3, 2012) (same). The Court agrees.

"A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss." *Markel Am. Ins. Co. v. Mr. Demolition, Inc.*, 717 F. Supp. 3d 238, 244 (E.D.N.Y. 2024) (quotation omitted). "However, '[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.'" *Id.* (alteration in original) (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)); *see*

*also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."). "Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted . . . ." *Ghartey*, 869 F.2d at 162; *accord Ruane v. Cnty. of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013).

Because there is no federal statute of limitations governing actions brought pursuant to § 1983, courts apply the forum state's general personal injury statute of limitations. *Lounsbury v. Jeffries,* 25 F.3d 131, 133 (2d Cir. 1994). "In an action arising in New York pursuant to Section 1983, the applicable statute of limitations is 'borrowed from New York's general statute of limitations for personal injury actions,' which is three years." *Ruane*, 923 F. Supp. 2d at 458; *see Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir. 1997) ("New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs section 1983 actions in New York."). "The three-year limitations period applies regardless of whether Plaintiff seeks legal, equitable, or declaratory relief." *Levine v. McCabe,* 357 F. Supp. 2d 608, 614 (E.D.N.Y. 2005). As for accrual, "[f]ederal law determines when a section 1983 cause of action accrues." *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002). The Second Circuit has ruled that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of N.Y.,* 632 F.2d 185, 191 (2d Cir. 1980).

Here, Plaintiff's complaint alleges that he was unaware that his June 2014 hospitalization had caused firearms disabilities until a federal background check prevented him from purchasing a new shotgun in April 2020. ECF No. 1 at ¶¶ 3, 100. Accepting those allegations as true, Plaintiff knew or had reason to know, no later than April 2020, that he did not have prior notice or an opportunity to be heard regarding his inclusion in the NICS database. Plaintiff's federal action was filed on February 9, 2024, almost four years later. *Id.* at 20. Accordingly, because the statute of limitations has expired, Plaintiff's due process claim must be dismissed with prejudice. Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons discussed, Plaintiff's Second and Fourteenth Amendment claims cannot survive the instant motion to dismiss. His due process claim is untimely as apparent from the face of his complaint, and his remaining grievances are based on the faulty legal premise that his hospitalization pursuant to MHL § 9.39 was not an "involuntary commitment." Moreover, Plaintiff's federal action does not raise any discernable facial or as-applied constitutional challenges to federal or state law and, even if it did, Plaintiff did not comply with Federal Rule of Civil Procedure 5.1(a). Plaintiff's complaint must be dismissed in its entirety and with prejudice.

## ORDER

For the foregoing reasons,

IT IS HEREBY ORDERED that the motion to dismiss, ECF No. 7, is GRANTED; and it is further

ORDERED that Plaintiff's Second and Fourteenth Amendment claims are DISMISSED with prejudice; and it is further

ORDERED that the Clerk of Court shall close this case.

SO ORDERED.

Dated: July 14, 2025
       Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge